UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LIVING HOPE PARMA, INC., | ) | Case No.: 1:26 CV 323 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| BROTHERHOOD MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court is Plaintiff Living Hope Parma, Inc.'s Motion to Dismiss or Strike Defendant's Counterclaim for Declaratory Judgment. (ECF No. 7.) For the reasons below, the court grants the Motion.

**I. BACKGROUND**

A.    **Factual Background**

This case involves an insurance dispute between Plaintiff Living Hope Parma, Inc. ("Living Hope") and Defendant Brotherhood Mutual Insurance Company ("BMIC"), regarding whether damage to Plaintiff's property resulted from natural causes, such that it falls under the terms of the Parties' insurance policy. Plaintiff Living Hope is an Ohio nonprofit religious organization that owns the relevant property, at 12970 Huffman Road in Parma, Ohio, which it operates as a church

consisting of five structures (the "Church Buildings").[1] (ECF No. 4, Compl. ¶ 1.) Defendant BMIC is an Indiana insurance company, with a license to issue insurance policies in Ohio. (*Id.*)

On May 16, 2022, BMIC issued an insurance policy to Living Hope (Policy #34M5A0516374) (the "Policy"), which, in relevant part, provided coverage for the Church Buildings. The Policy was in effect for three years, until May 16, 2025. (*Id.* ¶¶ 3-4.)

On August 6, 2024, a tornado struck the City of Parma, which Living Hope claims "caused damage to the roof of Living Hope's [Church Buildings]" and "also caused interior damage." (ECF No. 7, Mot. at PageID 344.) On September 16, 2024, Living Hope notified BMIC and submitted a loss report, after which BMIC opened an insurance claim. (*Id.*; Compl. ¶ 6.) According to the Ohio Economic Roofing Report, (ECF No. 2, Ans. Ex. 5 at PageID 315–24), attached as an Exhibit to BMIC's Answer, the estimated property damage totals $344,703.39. (*Id.*; Compl. ¶ 8.)

Upon receiving Living Hope's insurance claim, BMIC retained Bryan Scott ("Mr. Scott") from American Structurepoint, Inc. to investigate the damage to the Church Buildings. (Countercl. ¶¶ 9–12.) Mr. Scott inspected the Church Buildings on November 15, 2024, and again on March 4, 2025. (*Id.* ¶ 10.) On March 13, 2025, he compiled his findings in the "American Structurepoint Report" (or "Report"). (Ans. Ex. 3.) In the Report, Mr. Scott stated his "observations, experience, and professional judgment" led him to conclude the Church Buildings' damage was not consistent with weather effects from a tornado. (*Id.*) Instead, according to the Report, the damage was caused by prior construction activities, improper construction and maintenance, and hidden deficiencies of

---

[1]    Living Hope also owns a "parsonage" at 12974 Huffman Road, also in Parma, Ohio. (ECF No. 2, Countercl. ¶ 3.) However, Living Hope's Complaint does not assert claims regarding the parsonage, so it is not relevant to resolving this matter.

the Church Buildings. (Countercl. ¶ 12.) On April 8, 2025, based on the investigation and Mr. Scott's Report, BMIC told Living Hope that the Policy "did not provide coverage for the claim." (*Id.* ¶ 13.)

The Parties agree that this case arises out of and concerns Policy # 34M5A0516374. (Compl. ¶ 2; Ans. ¶ 2.) They do not dispute the Policy's relevant language or provisions. (*See* Ans. ¶ 2 (stating "the BMIC Policy speaks for itself in terms of the coverages offered"); Countercl. at PageID16–18.) Rather, the Parties dispute whether the damage to the Church Buildings was caused by the tornado and its effects, as Living Hope contends, or caused by construction and maintenance conditions excepted from coverage, as BMIC contends. (*See, e.g.*, Mot. at PageID 348 (explaining issue is "whether a covered peril, such as a tornado/wind event, caused damage to the Property").)

## B.    Procedural Background

On January 5, 2026, Living Hope initiated an action in the Cuyahoga County Court of Common Pleas, Case No. CV-26-130550, advancing two claims against BMIC: (1) Breach of Contract, and (2) Breach of the Covenant of Good Faith and Fair Dealing. (Compl. ¶¶ 21–35.) Shortly thereafter, on February 9, 2026, BMIC filed a Notice of Removal, (ECF No. 1), removing the case to the Northern District of Ohio, pursuant to 28 U.S.C. §§ 1441 and 1446. It also filed an accompanying Supplement, (ECF No. 4), attaching the Complaint from the Cuyahoga County Court. On the same date, February 9, 2026, BMIC filed its Answer, (ECF No. 2 at PageID 8–13), with a Counterclaim for Declaratory Judgment. (*Id.* at PageID 13–18.)

BMIC's Counterclaim asks the court to declare Living Hope's insurance claim, "is not covered by the BMIC Policy and that BMIC has satisfied all of its obligations to Living Hope relative to the claim." (Countercl. ¶ 21.) On March 2, 2026, Living Hope filed its Motion to Dismiss or Strike Defendant's Counterclaim. (ECF No. 7.) On April 1, 2026, BMIC filed its Opposition.

(ECF No. 11.) Living Hope did not file a Reply. Thus, the motion is now ripe.

## II. LEGAL STANDARD

Initially, when a case is removed from state to federal court, the district court must ensure removal was proper. Under 28 U.S.C. § 1441, "[r]emoval . . . to federal court is proper for 'any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction.'" *Torre Rossa, LLC v. Liberty Mut. Ins.*, No. 1:20 CV 1095, 2020 WL 9599681, at \*2 (N.D. Ohio Nov. 18, 2020). District courts' original jurisdiction includes federal question jurisdiction or diversity jurisdiction; here, only the latter is relevant. Diversity jurisdiction is the district courts' original jurisdiction over "civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." *Id.* (quoting 28 U.S.C. § 1332(a)). The removing defendant must show proper jurisdiction at the time of removal. *Id.* Crucially, "when a defendant seeks federal-court adjudication, [their] amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at \*3 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014)).

In this case, there is complete diversity of citizenship; Living Hope is a nonprofit religious organization in Parma, Ohio, and BMIC is an Indiana corporation with its principal place of business in Indiana. (Notice of Removal at PageID 1.) The Notice of Removal alleges the amount-in-controversy requirement is met because the Complaint "seeks compensatory damages related to claims for breach of contract and bad faith interest in relation to an insurance policy issued by BMIC . . . for property damage amount[ing] to $344,703.39." (*Id.* at PageID 2.) Living Hope does not contest that amount-in-controversy, or otherwise oppose removal, (*see* Mot. at PageID 344), and the

-4-

court finds BMIC met its burden of showing proper jurisdiction. Accordingly, the court further finds it has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a).

However, the court must separately consider whether it should entertain BMIC's declaratory judgment Counterclaim. A federal court determining whether to exercise jurisdiction over a declaratory judgment claim has "unique and substantial discretion in deciding whether to declare the rights of litigants," pursuant to the Declaratory Judgment Act. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also* 28 U.S.C. § 2201 (providing courts "may declare the rights and other legal relations of any interested party seeking such declaration"). Even when a district court has a proper basis for jurisdiction, "it [is] under no compulsion to exercise [its] discretion." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). However, the court's discretion is not unfettered. *United States Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564 (6th Cir. 2006). In *Grand Trunk Western Railroad Company v. Consolidated Rail Corporation*, 746 F.2d 323, 326 (6th Cir. 1984), the Sixth Circuit identified five factors that district courts must consider:

> (1) [W]hether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk*, 746 F.2d at 326). These five considerations—the *Grand Trunk* factors—are not necessarily equal; but the Sixth Circuit has "'never indicated' the relative weights of the factors. *Id.* (quoting *Flowers*, 513 F.3d at 563). As long as the court "take[s] a good look at the issue and engage[s] in a reasoned analysis," it has "substantial discretion to exercise jurisdiction." *Id.* (quotation marks omitted). Thus, a "district court's decision to exercise jurisdiction over a declaratory judgment action" is reviewed under the deferential "abuse of discretion" standard. *Flowers*, 513 F.3d at 546.

Furthermore, in some cases, courts decline to exercise jurisdiction over a declaratory judgment action because it is redundant of the original action. *See Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 405 (6th Cir. 2017). Redundancy stands alone as a basis for dismissal because it indicates lack of a useful purpose, and courts should generally only entertain declaratory judgment actions that "will 'serve a useful purpose' and . . . 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *Grand Trunk*, 746 F.2d at 326). Notably, courts will "look[] specifically at the issue of redundancy and may appropriately do so without relying on the *Grand Trunk* factors." *Id.* at 405–06. Here, given the facts of this case and the focus of the argument in the Motion to Dismiss, the court will first and foremost consider the matter of redundancy and whether the declaratory judgment claim would serve any useful purpose.

### III. LAW AND ANALYSIS

Living Hope's Motion to Dismiss primarily argues BMIC's Counterclaim for Declaratory Judgment should be dismissed because it is duplicative and subsumed by Living Hope's original claim for Breach of Contract. (Mot. at PageID 346–50.) Furthermore, Living Hope argues in the alternative that the *Grand Trunk* factors weigh in favor of dismissal, and BMIC does not have an

independent cause of action. (*Id.* at PageID 350–54.) In its Opposition, BMIC responds that its claim is not redundant and serves a useful purpose, and that the *Grand Trunk* factors weigh in favor of granting its cognizable cause of action for declaratory judgment . (Opp'n at PageID 698–705.)

The court begins by discussing the matter of the Counterclaim's redundancy, and then considers the applicability of the *Grand Trunk* factors in this case.

## A.      Dismissal for Redundancy of Counterclaim

In its Motion, Living Hope contends that the Counterclaim is "redundant, duplicative, and subsumed by Living Hope's breach of contract claim." (Mot. at PageID 349.) BMIC responds that its Counterclaim is not redundant, and that resolution of its claim could end the litigation. (Opp'n at PageID 698–700.)

When deciding whether to grant declaratory judgment, courts may "evaluate[] whether such a 'useful purpose' exists by looking specifically at the issue of redundancy." *Malibu Media, LLC*, 705 F. App'x at 405–06. This redundancy consideration occurs independently "without relying on the *Grand Trunk* factors." *Id.* While courts differ on how they treat redundant claims, this court has explained that the inquiry "should focus on whether the counterclaims serve any useful purpose." *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006). This "useful purpose" determination for whether to hear a declaratory judgment claim typically results in dismissal for redundancy in cases where, "it is clear that there is a complete identity of factual and legal issues between the Complaint and the counterclaim." *Id.* (citation and quotation marks omitted). Although "it may be difficult in most instances to determine whether counterclaims are identical early in litigation," a court should nonetheless dismiss a redundant claim for declaratory relief if it determines "there is no doubt that it will be rendered moot by the

-7-

adjudication of the main action." *Id.* (citation and quotation marks omitted).

Here, Living Hope argues that the Counterclaim "mirrors Living Hope's breach of contract claim and/or Brotherhood Mutual's defense(s) to that claim," and thus has "no useful purpose." (Mot. at PageID 346.) The Motion cites numerous cases dismissing declaratory judgment counterclaims as redundant, because they were found to be "duplicative and unnecessary," or "a 'mirror image' of [Plaintiff]'s complaint" which "necessarily [would] be resolved with the adjudication" of the plaintiff's claims. (*Id.* at PageID 348–50 (citing *Gregor v. Rice Drilling D, LLC*, No. 2:21-CV-3999, 2024 WL 169119, at *4 (S.D. Ohio Jan 16, 2024); *Malibu Media, LLC*, 705 F. App'x at 406).) Living Hope argues the same reasoning applies to BMIC's Counterclaim, which should likewise be dismissed as "duplicative and unnecessary." (*Id.*) On the other hand, BMIC asserts its Counterclaim is not redundant, because it would bring to light "operative facts," and "dispose of this entire litigation." (Opp'n at PageID 694.) First, BMIC contends that cases dismissing counterclaims as redundant mainly involve plaintiffs seeking declaratory judgment, so the redundancy analysis does not apply to its Counterclaim as Defendant. (*Id.* at PageID 698–700.) Otherwise, BMIC attacks the sufficiency of the Complaint, arguing the Counterclaim provides more detailed facts than the vague allegations in the Complaint. (*Id.*)

Living Hope's redundancy argument is well-taken, as the court finds there is no doubt the Counterclaim will be rendered moot by adjudication of Living Hope's claims. BMIC does not present any new factual or legal issues in the Counterclaim that would not be decided to resolve the Plaintiff's claims; it only asks for a declaration that it is not liable for Living Hope's claims against it. Indeed, "[t]he only apparent difference between the amended complaint and the declaratory counterclaim is that the parties desire opposite results." *Orleans Int'l., Inc. v. Mistica Foods, L.L.C.*,

No. 15-13525, 2016 WL 3878256 (E.D. Mich. July 18, 2016). In this way, BMIC's Counterclaim is a mirror image of the Complaint, as it effectively operates only as a general denial of Plaintiff's claims and assertion of its desire for a decision in its favor. Because there is "complete identity of factual and legal issues" between the Complaint and Counterclaim, so the Counterclaim serves no useful purpose in this case. *Pettrey*, 2006 WL 3342633, at *3.

Furthermore, BMIC's arguments are unpersuasive. As for its argument that redundancy is an issue relevant only to a Plaintiff's declaratory judgment claim, BMIC cites no support for why the same rationale would not apply to a defendant who brings redundant claims, and the court has found none. Similarly, unpersuasive is BMIC's argument regarding insufficiency of the Complaint. While the Complaint does lack detail, a declaratory judgment claim is not the proper vehicle to attack insufficiently pled claims—a 12(b)(6) motion is. Yet, instead of filing a pre-Answer motion to dismiss, BMIC filed its Answer to the allegations in the Complaint, alongside its Counterclaim. (ECF No. 2.) Necessarily, then, the Complaint was sufficient to put BMIC on notice of the claims against it in order to adequately respond. Insofar as it contends it was not able to meaningfully answer the allegations, it waived the ability to make that argument when it filed its Answer. The court finds the Counterclaim has no useful purpose, as it "will be rendered moot by the adjudication of the main action," and thus should be dismissed. *See Pettrey*, 2006 WL 3342633, at *3.

**B.      Dismissal Under *Grand Trunk* Analysis of Counterclaim**

Although redundancy is enough to dismiss Defendant's Counterclaim, the court will also discuss the *Grand Trunk* analysis, as the briefing of the parties discuss the factors at some length. As an initial matter, *Grand Trunk* is an abstention-based doctrine, typically applying when courts examine claims with underlying or parallel state connections. This case presents a less common

application of *Grand Trunk*, as is clear from a cursory examination of the factors themselves, as well as the majority of cases applying them. *See*, *e.g.*, *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519 (6th Cir. 2025); *Cole's Place*, 936 F.3d 386. Declaratory judgments are generally appropriate when sought to clarify specific legal issues, often "before an injury-in-fact has occurred" or ripened to the stage of filing suit. *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012).

    1.    *Grand Trunk* Factors One and Two

The first and second *Grand Trunk* factors are: (1) whether the declaratory action would settle the controversy; and (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue. 746 F.2d at 326. As this court has explained: "[i]n insurance coverage cases, most courts consider the first two factors together because it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Torre Rossa, LLC*, 2020 WL 9599681, at *4 (citation and internal quotation marks omitted.)

Living Hope argues a declaratory action would not settle the controversy or clarify legal relations, because the Policy's terms or meaning are not in question, "but, rather, [this] is simply a causation dispute." (Mot. at PageID 348.) Although disagreeing about the cause of property damage, "Living Hope does not dispute the enforceability of the terms of the insurance policy/contract." (*Id.* at PageID 349.) Thus, Living Hope contends, even with a declaratory judgment, causation would still have to be decided. (*Id.* at PageID 348–50.) On the other hand, BMIC argues declaratory judgment would settle the controversy and clarify legal relations by establishing its obligations to Living Hope. (Opp'n at Page ID 698–703.) BMIC argues its Counterclaim "necessarily, will resolve all claims," because if the court declares the Policy does not cover the Church Buildings' damage, Living Hope's

-10-

claims fail. (*Id.* at PageID 702.)

The court finds declaratory judgment would not necessarily resolve the issues in this case. Although BMIC frames the issue as a pure matter of law best suited for declaratory judgment, it is not. The Counterclaim seeks a declaration of whether the Policy covers the damage to the Church Buildings; but this is not actually a dispute about legal relationships, enforceability, or proper interpretation of terms of the contract as a matter of law. (*See* Ans. ¶ 2 (stating "the BMIC Policy speaks for itself in terms of the coverages offered"); Mot. at PageID 349.) Instead, the parties dispute whether the damage was *caused* by a tornado, as Plaintiff asserts, or by prior construction, improper maintenance, and hidden deficiencies, as Defendant asserts. Thus, even if the parties' contractual obligations are clarified, this case turns on a question of fact. It does not involve a question of pure contract law which might be better suited for a declaratory judgment action. Moreover, the court is "under no compulsion" to exercise its jurisdiction to clarify the parties' relations via declaratory judgment, even where it may do so. *Brillhart*, 316 U.S. at 494.

The court finds declaratory judgment would not settle the controversy or clarify the legal relations insofar as the causation dispute in this case. Therefore, the first and second factors weigh against exercising jurisdiction over BMIC's Counterclaim.

2.      *Grand Trunk* Factor Three

The third *Grand Trunk* factor is whether the declaratory remedy is being used merely for "procedural fencing" or "to provide an arena for a race for res judicata." 746 F.2d at 326. Living Hope did not discuss the third and fourth factors, but BMIC contends they lean in its favor.

As for the third factor, BMIC argues it does not weigh against the court's exercise of jurisdiction, given its lack of an improper motive. (Opp'n at Page ID 703.) The court agrees that the

-11-

third factor does not weigh against its exercise of jurisdiction. There is "no evidence of [improper motive] in the record," so the court will not presume it exists. *Torre Rossa, LLC,* 2020 WL 9599681, at *4 (internal quotation marks omitted) (quoting *Flowers*, 513 F.3d at 558). While the court does not question the motive of Defendant, its declaratory judgment claim does reflect a bit of procedural fencing. BMIC desires that its declaratory judgment claim take precedence over Living Hope's causes of action, despite the latter raising the same issues to be addressed in the broader context of the case. Thus, on balance, the court finds the third factor is neutral.

3.      *Grand Trunk* Factor Four

The fourth *Grand Trunk* factor is whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. 746 F.2d at 326. As for this factor, BMIC asserts that there is no underlying state claim or pending litigation, so the "rationale for declining jurisdiction is weaker" in this case. (Opp'n at PageID 703 (citing *Torre Rossa, LLC*, 2020 WL 9599681, at *4).)

As the court previously explained, *Grand Trunk* is a doctrine of abstention, and courts usually must be cognizant of related state court proceedings. However, that does not apply here, because there is no parallel or connected state case. Moreover, this matter does not involve any "novel issues of Ohio insurance law." *Cf. Torre Rossa, LLC,* 2020 WL 9599681, at *4–5. These considerations weigh in favor of exercising jurisdiction over the Counterclaim. *Id.*

4.      *Grand Trunk* Factor Five

The fifth *Grand Trunk* factor considers whether there is an alternative remedy that is better or more effective. 746 F.2d at 326. Living Hope argues this factor weighs against jurisdiction, because its Breach of Contract claim will already address the question in BMIC's Counterclaim.

-12-

(Mot. at PageID 9–10.) BMIC responds that its Counterclaim is more effective because it contains detailed facts, unlike the Complaint's vague allegations, and because declaratory judgment would resolve Living Hope's claims. (Opp'n at PageID 704.)

The court is not persuaded that declaratory judgment would be more effective. Unlike the typical case "entertain[ing] a declaratory judgment action, . . . [h]ere, Plaintiff['s] claims have already ripened into a cause of action, and Plaintiff[] ha[s] sought damages." *Miami Valley Mobile Health Servs., Inc.*, 852 F. Supp. 2d at 938. At this stage, "Plaintiff['s] claim for damages is a better and more effective remedy." *Id.* BMIC's declaratory judgment action is less effective, because the point at which the court could declare whether the Church Buildings' damage is "covered by the BMIC Policy and that BMIC has satisfied all of its obligations," (Countercl. at PageID 18), is the same point at which the court could decide Living Hope's causes of action. In other words, the Counterclaim is rendered moot by adjudication of Plaintiff's claims for damages. And the court must decide those claims for monetary damages, because "the exercise of jurisdiction over the damage [sic] claims is mandatory if all of the jurisdictional requirements of 28 U.S.C. § 1332(a) are met." *Torre Rossa, LLC*, 2020 WL 9599681, at *5 (citing *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2020 WL 5909806, at *4 (N.D. Ohio Oct. 6, 2020); *Knowlton Const. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-CV-0748, 2007 WL 4365690, at *3 (S.D. Ohio Dec. 13, 2007)). As explained above, *supra* Section II, diversity jurisdiction under § 1332(a)'s is proper here, so "[t]he exercise of jurisdiction over damages claims is mandatory and not discretionary as it is for [a] declaratory judgment claim." *Id.* As a result, BMIC's Counterclaim for declaratory judgment would not "settle the entire controversy," *id.*, and Living Hope's original causes of action are the better, more effective remedy. Thus, the fifth factor weighs against exercising jurisdiction.

On balance, the *Grand Trunk* factors indicate the court should not entertain BMIC's Counterclaim for Declaratory Judgment. While factor three favors exercising jurisdiction and factor four is neutral at best, the court finds factor one, two, and five weigh against the court exercising jurisdiction over the declaratory judgment claim.

Ultimately, the court finds the Counterclaim for Declaratory Judgment should be dismissed for two reasons: (1) it is redundant and serves no useful purpose, as a mirror image of the Complaint, and, alternatively, (2) because the application of *Grand Trunk* to this case counsels against exercising jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion to Dismiss or Strike Defendant's Counterclaim for Declaratory Judgment. (ECF No. 7.) Accordingly, Defendant's Counterclaim, (ECF No. 2 at PageID 13–18), is hereby dismissed.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

July 9, 2026

-14-